All rise. This Honorable Appellate Court is now in session. Please be seated. Advocate, please call the case. 3-16-0-8-4-8 Performance Food Group Co., LLC, et al. Appellee by James Muda v. ARBA Care Center of Bloomington, LLC, et al. Appellant by Alan Stein. May I close your case? You may. Can I begin? Yes. Thank you, Your Honor. In this case, Performance Food Group provided food products in ASTA Nursing Homes and later to the ARBA Nursing Homes. The ASTA Nursing Homes have filed for bankruptcy protection. Performance Food Groups received cash on delivery payments from ARBA Nursing Homes but applied them to reduce the amount of the ASTA accounts rather than the ARBA accounts. The Circuit Court erred in entering a judgment against ARBA for the amounts that should have been applied to ASTA's outstanding balances. Performance Food Group is asking to hold ARBA liable for food products allegedly provided to ASTA. Performance Food Group is arguing that ARBA and ASTA are the same. But if ARBA and ASTA are the same, there's a problem. ASTA is in bankruptcy. Had Performance Food Group properly applied ARBA's payments to ARBA's orders, the figures relating to ARBA would be lower or non-existent. There also was no prove-up hearing before the Circuit Courts after the entry of the judgment to prove up the judgment amount that was entered without any supporting documentation in error. The Circuit Court erred also in accepting Performance Food Group's statements of undisputed facts to be undisputed facts. Performance Food Group argued that the Circuit Court had to accept as true its statement of undisputed facts, ignoring the fact that pursuant to 735 ILCS 5.2-1005C, depositions which are in the record are to be considered to determine whether or not there is a genuine issue of material fact. Michael Gilman's sworn deposition was attached by the plaintiff, PFG, to its motion for summary judgment and was thus in the record. Michael Gilman's deposition would dispute the facts that PFG claimed were undisputed. What wasn't in the record was a proper affidavit by the plaintiff attaching the statements or invoices certifying the amounts allegedly owed by the ASTA-ARBA entity. That's the Robidoux v. Oliphant case that we cite in our briefs. There is nothing in the record verifying the amounts due and or how the amounts are derived because there are no such documents in the record. They were never reviewed by the Circuit Court. There is nothing in the record that supports any argument that ARBA agreed that ARBA's payments could be applied to old ASTA accounts. Indeed, at the oral argument on the motion for summary judgment, PFG admitted that no such promise or agreement was actually in the record. In fact, Plaintiff's counsel stated his quote was, This isn't in the record, but in the way of background, there were some promises made for payment. This isn't in the record. While performance group argued that it applied the payments to ASTA accounts rather than to ARBA because they were older due to a quote-unquote well-established practice and because from PFG's perspective, you know, that's a quote, ASTA and ARBA were one and the same, it did not attach any certified records to its Rule 191 affidavit documenting the supposed well-established practice. In his deposition, Michael Gilman of ASTA and ARBA testified that he objected to PFG's application of payments to ASTA's old accounts and that PFG was informed that ARBA had an agreement with its lender, Private Bank, that it could not pay ASTA bills with ARBA funds. Gilman also testified, and this is all attached to the motion by the Plaintiff to summary judgment, the food was never delivered to ARBA without a check because PFG required cash on delivery. So there were a lot of material issues of fact. Thus, the undisputed facts that PFG presented to the Circuit Court were really disputed based on PFG's own affidavit to its motion for summary judgment. PFG never met its burden of production and because PFG did not meet its burden of production, defendants were not even required to respond. It could simply rely solely upon the pleadings to create a question of material facts until PFG would have supplied facts that clearly entitled him to judgment as a matter of law. We cited this case, Nedsvickus v. Fung, 374 Illap III, 618. It's also well-known, a black-letter law, that mere allegations in the motion for summary judgment or in anything cannot prevail over sworn testimony. There was the sworn testimony of Michael Gilman that the Plaintiffs put forth, which disputed the undisputed facts, the alleged undisputed facts, and there was no counter-affidavit that was produced by the Plaintiff. So, the summary judgment that was entered was legally erroneous. Had the Circuit Court considered the motion for summary judgment by considering the unverified pleadings, the motion for summary judgment fails. PFG did not attach any invoices to the complaint or documentary proof as to how or why It applied current cash-on-delivery payments from ARBA for goods delivered to ARBA to reduce amounts owed by ASTA. They didn't prove any documents or attach any documents or documentary proof as to which amounts should have been part of the judgment. Those amounts that were applied to the old ASTA accounts should have been part of the bankruptcy estate, but instead were part of the judgment entered against ARBA. There's no documentary proof that credit was ever extended to ARBA or that ARBA did not pay PFG for goods that PFG sold to ARBA, or substantiating in how it was applied. In fact, Michael Gilman testified that food was never delivered to ARBA without a check, and that also was attached to the motion for summary judgment, and it prevails over unsworn testimony. Unsworn arguments. There was a suggestion in bankruptcy that was one of the pleadings that was brought to the circuit court, and when that was filed, that should have alerted the court that there was an automatic stay. An automatic stay is automatic. You don't have to file a motion to enforce an automatic stay. It's automatic. Of course, you could have gone to bankruptcy court and quickly enforced that if it was applicable. Even if that is true, it's an automatic stay. It's automatic. I know what the statute says, but I mean if there was a violation of an automatic stay, the bankruptcy courts respond to it. They do something. Well, what should have been done was when there was a suggestion of bankruptcy, the plaintiff should have filed a motion to get a carve-out from the automatic stay to continue the case. It's the plaintiff's case. They didn't do that. And so that's... The statute could have enforced the stay. It's the bankruptcy court that enforces the stay. And we raise it as an affirmative defense in our pleading. So one of our pleadings was there's a bankruptcy and here's a suggestion of bankruptcy, and the court was aware of that. And again, it's automatic. There's nothing that we need to do as the party because it's automatic. And any judgment that's answered is void. And especially what's odd is that... Well, what happens when people violate an automatic stay? What does the protective party do? Well, under the case, Bob, the cases I found, I can't remember, NG versus Adler, it's just whatever judgment that's post-petition that's entered is void. So, I mean, regardless of what happened, it's a void judgment because it's in violation of an automatic injunction of the federal court. Again, what should have happened was someone should have went, and I argue the plaintiff because it's a plaintiff's case, should have went to the bankruptcy court and filed a motion for relief of stay. And it's actually a routine motion. And what happens is the bankruptcy court, if they decide to do that, they enter a motion for relief of stay. They may decide they don't want to do that because what's argued here by the plaintiff is that Arbonne and Astor are the same. If Arbonne and Astor are the same, then Astor's in bankruptcy, then the judgment that was entered was void and was subject to the stay, regardless of whether or not the plaintiff went back to the bankruptcy court. So that's one of our arguments. The other huge argument we have is, again, Robledo versus Oliphant. It's an Illinois Supreme Court case, and it's stringent. All papers, exhibits, and documents have to be attached to the Rule 191 affidavit, and they weren't here. And not only – in Robledo versus Oliphant, everybody – I guess the way I remember the case is the documents weren't physically attached, but they were, like, in the room, and everybody knew where they were. They were in the record, but they weren't attached to the affidavit. Here, the documents aren't even in the record. So the circuit court made an error in relying on this affidavit by a Mr. Spear when the documents referred to are nowhere in the record. Even if you look in the record that's before this appellate court, the documents that are referred to in the affidavit weren't – they're nowhere to be found. They're not in the record. They're nowhere. And Robledo versus Oliphant has not been overturned. It controls. There has been no Supreme Court case that's said that Robledo versus Oliphant is overturned, or that the requirements that are set by Robledo versus Oliphant are somehow just suggestions. In fact, the court went on to say that these are not suggestions. We take these rules seriously. To this day, what balances are our balances and what balances are asked of balances are listed. Never fleshed out. The judge just entered an order relying on this affidavit that didn't have any documents attached to it. And taking undisputed facts when there was sworn testimony. Whether or not – let's – even the issue of whether or not Arba – okay, Arba and Aska were two different nursing homes. Plaintiff was arguing that they were the same. Well, whether or not they're the same – let's take one step further. There was an issue of fact as to whether or not they're the same. That was what plaintiff was arguing. But there's some factual issues that were never really resolved. Especially because Michael Gilman in his deposition testimony, he disputed the undisputed facts. And so when there was a dispute as to the facts, that creates an issue of fact for a jury. And especially when the case law says that continuation or success reliability is a fact-intensive process. So what is your evidence against the so-called de facto merger? Michael Gilman in his testimony mentioned that there was – these agreements were entered into temporarily to set up for the Medicare number. There were also restrictions that were put on them by the bank, private bank, that said that you cannot pay bills relating to Arba – I'm sorry, Aska bills with Arba funds. The bank, private bank – and it was all in the deposition testimony – made sure that these things were kept separate. And if there was a violation, the private bank could have called in the loan. And all of these issues should have been explored further through discovery or through issues of fact. And the deposition was pretty clear. And the way it was laid out in the motion for summary judgment was these are undisputed facts. They were unsupported by testimony other than Mr. Spears' affidavit. And then we had Michael Gilman's sworn testimony that talked about things like private bank, that talked about things about how there were some landlords and there was a call on the rent and there was a new landlord. And there was a whole process and reasons that were explained in the deposition as to why the two were different. And when the circuit court was left to compare between an unsworn statement that's labeled as undisputed and Michael Gilman's testimony explaining the ways that things were not done the way plaintiffs said they were, I think that creates an issue of fact. I'm not saying that the court should have ruled that Michael Gilman was right or there's issues of fact for a later day. Is there any dispute that the officers and the shareholders or the directors, I'm not sure exactly what they were called, are the same for both organizations? There is a dispute because one person in particular I know was missing, Seth Gilman, and then there was one person behind the scene who was basically calling the shots, a Morius Formas, and that's also in the deposition transcript. Morius Formas was the guy who, at the end of the day, pulled the rug from underneath the nursing home and that's why at the end of the deposition testimony where Michael Gilman said he had to put the keys on the table, private bank had called on his loan. There were people that Michael Gilman had to answer to and he did not have complete control that he had before. So in ASCA, he had control. In ARBA, he didn't have control and there were new people calling the shots. There was a Maury Bellows before and now there is a Mr. Formas. And that's, again, all in the deposition testimony. Thank you so much. And that brings me to another point. There was an issue of fact as to whether or not this was a reorganization that was voluntarily done or whether or not it was done because of outside pressure and voluntary reorganization. I cite the Donahue versus Perkins case. This is a case where PFG is trying to have its cake and eat it too in terms of the bankruptcy aspect of it. On the one hand, they're arguing that ARBA and ASCA are the same. On the other hand, they're getting a judgment against ARBA. You can't have it both ways. The Seventh Circuit, and I know we're in a state court, but the Seventh Circuit, in a case, In Re, Furnaston, Sorge, and Van Company argued that if plaintiffs basically argued that if there is an identity of interest, basically if plaintiff is correct and there was no issue of material fact as to whether or not the two entities are the same, well, you end up in bankruptcy court because the automatic stay applies. So either way, there's an automatic stay or there's a continuity of interest, but we're arguing that the continuity of interest part wasn't satisfied because there's issues of material fact. But even if there weren't issues of material fact and we say that there are, that just brings you back to the automatic stay in the bankruptcy because then you're just saying that that's the one and the same. The fact will merge. It's a continuation. And again, you can't have it both ways. Thank you. And I will reserve time for reply. Counsel, you may proceed. Good afternoon. May it please the court, counsel. As an initial matter, as we have stated in PFG's brief, the ARBA entities have forfeited most of the arguments they are now asserting on appeal because those matters were not raised before the circuit court. Beyond that, this case involves no question of material fact, and the legal arguments of ARBA simply fail. The ARBA entities contend PFG failed to meet its burden of production because it inadvertently failed to attach statements of account to the affidavit of Mike Speer. The amounts were pled in the complaint. And the ARBA entities did not raise that issue before the circuit court. Had the ARBA entities said before the circuit court, Your Honor, the plaintiff did not attach these statements of account to the affidavit, that was something that was easily curable before the circuit court. They didn't raise that issue, and they are now attempting to raise that for the first time on appeal, which is inappropriate. Beyond that, as to the amounts owed in his deposition, Michael Gilman testified he had not reviewed the invoices and the payments, nor had he seen the statements of account which were presented to him during the course of his deposition. Accordingly, he had no way of disputing the amounts claimed by PFG, and the record is otherwise devoid of any fact, certainly any specific fact, contradicting the amounts that PFG is claiming in this case. The basis, again, for the amounts owed were pled in the complaint. Mr. Gilman testified that his son-in-law, David Meiselman, purportedly reviewed the invoices and the credit statements. However, the ARBA entities did not file any affidavit of Mr. Meiselman in resistance to PFG's motion for summary judgment. Again, that was something that was easily done. If they wanted to contradict the amounts that were being claimed, they had the burden to come forward with specific facts to do that, and they failed to do so. The ARBA entities also make arguments about how payments by PFG were applied to ASTA balances versus ARBA balances, and that somehow the circuit court erred in deciding this as a matter of law as opposed to, and at the same time, ignoring material questions of fact. However, the position of PFG in this case is, under either the alter ego or the successor liability theories that PFG asserted before the circuit court, ARBA and ASTA are to be treated as one and the same entity. So whether it's a quote-unquote ASTA balance or a quote-unquote ARBA balance is immaterial, it's one balance, and how the payments were applied, either to the oldest account balance first or to the newest, and whether the payments were COD or on account is immaterial because it was one unified account under the alter ego or successor liability theory. Mr. Gilman's testimony actually enforces the idea that the ASTA entities gave something of value to the ARBA entities, and that being the Medicare and Medicaid numbers that Mr. Gilman testified were transferred pursuant to these operation transfer agreements between the ASTA and the corresponding ARBA entities. In their summary judgment response, the ARBA entities also argue the new owners of these facilities were not the same owners that entered into the contract with defendants and that are subject to this litigation. Contrary to plaintiff's arguments, no person in the ASTA's are former owners or control an interest in the successor liability. And while the response to the motion for summary judgment is less than clear, the ARBA entities are confusing the issue, and their opening brief at pages 30 and 31, they discuss the ownership of entities that own the real estate where the skilled care facilities were operated. However, those are separate entities which are not parties to this litigation. In other words, one set of entities own the real estate, and those entities leased that real estate to the separate operating entity, and the operating entities are the entities that are defendants in this case. So I think there's, I'm not saying it's intentional, but there's a confusion of the issue on the part of the ARBA entities in their briefs in this case. As to the issue of successor liability, the ARBA entities argue PFG ignored the sworn deposition testimony of Michael Gilman. However, he testified the ASTA entities had to change their ownership because we were also owners in a hospice company that was being indicted by the Justice Department and banks were not willing to extend lines of credit under the existing ownership. Therefore, the ARBA entities, we contend, were simply a change in form of ownership and not in substance. In fact, before the circuit court during oral argument concerning the motion for summary judgment, counsel then counsel for the defendant said, there was a change of ownership, Your Honor, and the court, Judge Papel responded, that sounds like it was in name only, however. Is that correct? And Mr. Gilman, Seth Gilman, responded, well, there was, from what I understand, there was some changes in the members. However, the manager, Michael Gilman, remained the same in three of them, and one of them, manager in Toluca, was not in the ARBA entity. I think that confirms and supports PFG's argument in this case. Mr. Michael Gilman was the principal. He was the principal officer. He signed on behalf of each set of entities, being the ASTA entities, the ARBA entities, these operations transfer agreements by which, if you read the agreements, all of the assets owned by the ASTA entities were transferred to the ARBA entities. He said, but that's not true. That's not what the agreements, or excuse me, that's not what in fact happened. All that happened was the ASTA entities transferred the use of, or the benefit of the use of their Medicaid billing numbers to the ARBA entities. And, in fact, under Chapter 42, Section 424.550A of the Code of Federal Regulations, as a general rule, a provider or supplier of Medicare or Medicaid services is prohibited from selling its Medicare billing number or privileges to any other entity or individual, or allowing that entity or individual to use those numbers. That's actually in violation of federal law. The ARBA entities also argue, for the first time on appeal, the complaint in this case did not attach any invoices or documentary proof as to how, again, PFG applied payments. And, again, we think that's a red herring because under our position, the ARBA and the ASTA entities are one and the same. It's one unified account balance of how those payments were applied is immaterial. Counsel mentions the Robodeaux case for the proposition that the affidavit of Mike Speer is improper and should be disregarded. Again, not an issue that was raised before the circuit court and we contend has been forfeited, nonetheless. The Robodeaux case involved an affidavit of the plaintiff's medical expert witness in a wrongful death case. And that affidavit failed to attach medical records or other materials upon which the expert relied in rendering an expert opinion. And, in fact, that the defendant physician's conduct fell below the applicable standard of care. And in that limited, we would say fact-specific context, the Illinois Supreme Court held Rule 191A's requirement of attaching papers upon which the affidavit relies is not a mere technical requirement but is inextricably linked to the provision requiring specific factual support in the affidavit itself. By contrast, what we have here are dollar amounts, balances that PFG claimed are owed by the ARBA entities and the ASTA entities in the complaint being verified by Mr. Speer and the deposition of Mr. Gilman, Michael Gilman, saying, I have no idea whether these numbers are right or wrong. That's the extent of the record in the case. And, again, if his son-in-law, Mr. Gilman's son-in-law, had, in fact, reviewed the dollar amounts that were owed and found that some payment had not been applied or the account balances were somehow improper or in error, all they had to do was simply file an affidavit, and that was not done. So, for those reasons, we think Robodeau is inapplicable to the facts of this particular case. Counsel alluded to the affirmative defenses in this case, and I'll just briefly state that an argument has been made, not here today, but that the affirmative defenses are admitted because no reply was filed. One of the cases we've cited in our brief, only if those affirmative defenses set forth specific facts and no reply is filed are those specific facts admitted. Here, each of the affirmative defenses, one being bankruptcy, one being unjust enrichment, they're simply legal conclusions with no specific facts being pledged. So our position is those are immaterial. And, again, that is another issue that was not raised. One was payment, right? One was payment, yes. But, again, that's not a specific fact. And which payment to which account? And, again, the easy way to address that matter would have been to file an affidavit before the circuit court, which wasn't done. Do you have any support for your argument that Robodeau applies or doesn't apply based on what the evidence is that's being proposed? I was only able to find one case in Illinois, and it went through basically the same analysis that I just described in terms of how that particular appellate court, let me say at this point it's an unpublished decision so I didn't cite it. But I think the reasoning applies, and that is that under Robodeau we're dealing with an expert opinion. And that expert, who was not the creator of the documents upon which the opinion was based, did not attach those underlying documents to the opinion. This is different. We have dollar amounts that are put in the complaint that are not contradicted by the defendants in the case that are simply being affirmed by Mr. Spear as the account manager at PFG. I would argue that the affidavit was really even unnecessary because the complaint itself set forth the various dollar amounts that were not contradicted. In other words, the ARBA entities nor the ASTA entities came forth and said, well, they say the balance is $100,000. We say the balance is $50,000. So they say that there's an issue, but they haven't told us what that issue is. And the Supreme Court doesn't talk in terms of issues in Robodeau. It just says if you're going to file an affidavit, you have to attach the papers on which you're relying. Sure. And you chose to file the affidavit. Yeah, and unfortunately, through inadvertence, the statements of account which were intended to be attached, that didn't happen. My response to that is let's assume that this case were remanded to the circuit court. And we go back and we attach the statements of account to the affidavit. What happens next? Mr. Gilman has already said, I have no way of disputing those. I've never seen them. They didn't file an affidavit. I think all that would do is give the defendants in this case a second bite of the apple to come back and now that they've been educated, file some sort or attempt to file some sort of contra affidavit saying these amounts are wrong. Again, that was something that could have been easily cured before the circuit court had the defendants raised that, which they did not do. So my response to that, Your Honor, is a remand to attach the statements of account would essentially be a useless act in this situation. If that were the only basis for remand. Correct, yes. Dealing only with that point. Two minutes. Thank you. I just want to speak briefly about the automatic stay issue. Again, that's an argument that was not developed. Perhaps it was alluded to at the circuit court level, but it certainly wasn't developed. Certainly by any facts in the record or any specific citations, certainly to the Adler case. But the problem with the Adler case is the Pavers case. And in that case, the same court said, we have two entities and someone is claiming one is the alter ego of the other. That doesn't necessarily mean that one, or excuse me, that both are the debtor for bankruptcy purposes. Because the easy solution, if the one party, the alter ego, the alleged alter ego wanted to claim protection under the bankruptcy law, all it had to do was file a petition for bankruptcy. And none of the cases say that, as I see it, the bankruptcy court or trustee, if you will, has exclusive jurisdiction to deal with the alter ego issue. Here, as opposed to in the Copra finding case, where a bankruptcy trustee had actually brought an action in relation to an alter ego claim, we don't have any assertion here that the bankruptcy court has filed an alter ego claim or is threatening to file an alter ego claim against the ARPA entities. For one thing, there's nothing for the bankruptcy trustee in the ASTA bankruptcy to proceed against the ARPA entities to recover because nothing was transferred from the ASTA entities to the ARPA entities in the way of value. So the question is, does the automatic stay apply in the first instance? And we would argue that it simply doesn't. Thank you. Thank you, Counselor. Yes, thank you, Your Honor. First of all, Your Honors, I want to point out that in the case below, defendants filed an answer denying the allegations and complaints. So in terms of saying, oh, the amounts are in the complaint, well, we denied that. So that's the first thing. Second of all, in the case below, the court asked the plaintiff in the oral argument, okay, if I understand you correctly, Mr. Zmuda, you're seeking to hold ARPA liable for food products that you provided to ASTA, which were consumed, I presume, during the course of conduct, I'm sorry, during the course of their operating their homes. Mr. Zmuda, well, yes. And I think part of the balances, at least, are purchases by ARPA as opposed to prior purchases by ASTA. That was never really fleshed out in terms of what are the amounts between ARPA and ASTA. And they've been arguing all along that ARPA and ASTA are the same. The Pavers case specifically said in the case that it's different from Adler. So, I mean, I don't even have to distinguish it. The court just said it was different. I don't think I need to remind the court, but there's an overview of pretty much all the issues that I've raised below. And, again, I want to remind the court that on the burden of production, the case law that I cited, that if the burden of production is not met, then the defendant doesn't have to do anything. The burden of production has to be met before we even need to respond. Your Honor, you hit the nail on the head. There are no exceptions that are identified in Rubidoux v. Oliphant. No authority that argues or advocates what counsel is saying. He mentions an unpublished opinion, I am assuming, of the appellate courts. But Rubidoux v. Oliphant is an Illinois Supreme Court decision. There are no Illinois Supreme Court decisions that say what plaintiff wishes that Rubidoux v. Oliphant would say. It doesn't say that. I mean, it couldn't be any more clear in the language of the case that it shall be applied in the way that it's supposed to be applied. No exceptions. It's shall. We conclude that Rule 191A is to be construed according to the plain and ordinary meaning of the language. And we have already held that Rule 191A's requirements are to be construed according to the plain language of the rule. Here, the plain language clearly requires that such papers be attached to the affidavit. And then it says, and the court goes on to say that this isn't an advisory rule. This shall be applied that way. Again, the automatic stay is automatic, and it's an automatic injunction by statute. Inadvertence to attach the documents is not an exception to Rubidoux v. Oliphant. In fact, in Rubidoux v. Oliphant, I believe there was inadvertently omitted from the affidavit there as well. In terms of Mr. Spear's affidavit, in paragraph 7, he says, when PFG learned of the transfer operations from the ASTA entities to the ARBA entities, PFG agreed to continue extending credit to the ARBA entities upon the credit terms previously provided to the ASTA entities, and the ASTA entities' account numbers established by PFG were used for the ARBA entities. Well, there was no paper attached to the affidavit that supported that. It's a foundation issue. In paragraph 8 of the affidavit, it says, the accounts for the ARBA entities were established months after PFG learned of the transfer of operations from the ASTA entities to the ARBA entities because PFG was informed the account balances for the ASTA entities would be paid in full. That also would require some papers. Thank you. Same thing in paragraph 9 and 10. In accordance with well-established policy, PFG applied payments for the ASTA ARBA accounts to the older invoice first. Well, that assumes that ASTA and ARBA are the same, and again, it also requires papers to support the testimony that there's some kind of well-established policy, and that's exactly what Roberto versus Oliphant is saying, and what the requirements of Rule 191 were designed to deal with. There was never an attack at the trial level about the spurious affidavit, was there? Again, it's the whole burden of production argument that I'm arguing, is that we didn't have to say anything as long as they don't meet the burden of production, and they didn't because they have an affidavit that doesn't attach the documents in violation of Roberto versus Oliphant. Yeah, but none of that was said to the trial court. Again, I mean, you have to meet your burden of production. Theoretically speaking, the case law says that if they file motion for summary judgment and we don't file any response whatsoever, that's the fun case that I mentioned earlier. You know, we don't have an obligation to do that until they meet the burden of production, which they have never met. If the burden of production is met, then the court is supposed to render its decision based on the pleadings. Here, unverified pleadings because, again, the affidavit is defective. So you have unverified pleadings, and that doesn't support a summary judgment. They have not met their burden of production. The argument that the banks will not loan money, that's the argument on whether or not there's an issue of fact as to whether or not there was an involuntary reorganization. That Michael Gilman was a manager that was the same as before, that's all part of the fact-based entry. There's a whole list of factors that goes into whether or not there was a continuation. One of them is identity of ownership. But that whole thing is a fact-based inquiry, which was never dealt with down below. I'm out of time. All right, thank you so much, Your Honors. I appreciate it. Thank you. Thank you for your arguments. The court will take a brief recess for panel change, and we'll take this matter under review. All rise.